**Albert F. Hamas, Plaintiff-Appellee, v. Robert Payne, Defendant, and Harvey G. Hill, Defendant-Appellant.**

**Gen. No. 68–94.**

Second District.

March 20, 1969.

Rehearing denied April 17, 1969.

Dixon, Devine, Ray and Morin, of Dixon, for appellant.

Peter F. Ferracuti, of Ottawa, for appellee.

PRESIDING JUSTICE MORAN delivered the opinion of the court.

Harvey G. Hill, codefendant, appeals from a judgment for damages against him and also from an order granting the plaintiff, Albert F. Hamas, a new trial on the issue of damages only. The defendant appeals from the latter part without leave of court.

A two-count complaint was filed, one count charging the codefendant, Robert Payne, with negligence, and the other count charging the defendant with wilful and wanton misconduct. The jury found Payne not guilty but found the defendant guilty and assessed damages in the sum of $8,000.

The defendant on appeal claims (1) that as a matter of law he was not guilty of wilful and wanton misconduct; (2) that as a matter of law the plaintiff was guilty of contributory wilful and wanton misconduct; (3) that the trial court erred in granting a new trial as to damages only; and, (4) that the trial court erred in refusing one of defendant's instructions.

It seems that in Lee County there is a blacktop road known as Walton Spur which runs eastward from Route

26 and then curves to the south into the Village of Walton, Illinois. At the beginning and end of the curve there are two gravel roads that extend both northward and eastward, respectively. Where these two extended roads meet, an intersection is created and this is the place where the collision involved herein occurred. The three described roads form the sides of a grassy triangle.

It is necessary to review portions of the voluminous and contested testimony. Payne testified that he was driving his car west towards the intersection on the gravel road with his wife and child; that the accident occurred at 8:30 p. m., about dusk; that he had his lights on and the road was dry; that he intended to turn left to the south; that at a point about two hundred feet back from the intersection he had put on his left turn signal; that when he got to the intersection his visibility was clear but he did not see any automobiles so he turned left; that after he had completely negotiated the turn, he was hit. He denied that his vehicle was struck in the intersection, and he stated that as he approached the intersection he was traveling at 30 m. p. h., although he had been going between 35 and 50 m. p. h. prior to that time.

A state police officer who investigated the accident arrived at the scene forty to forty-five minutes after receiving the call. He testified that he found the Payne vehicle on the grassy shoulder to the east of the north-south gravel road and to the south of the intersection; that the defendant's vehicle was driven into the passenger side of the Payne vehicle and was perpendicular to it and that the vehicles rested over forty feet south of the intersection at a fenceline which ran along, but set back from, the southeast corner of the intersection.

The officer further testified that he talked with Payne and the defendant the evening following the accident; that Payne told him that he was going to make a left turn to the south and he did not see the defendant's vehicle coming from the opposite direction, and he said,

"I suppose it was all my fault." The defendant told the officer that he was on Walton Spur coming from Route 26, going in an easterly direction and it was his original intention to go to Walton which would be around the curve to the south; however, he got confused and went straight ahead on the gravel road. Both denied the statement allegedly made to the officer.

A disinterested witness, Drew, was a passenger in a vehicle south of the intersection and saw the accident happen. He testified that it occurred a little bit south of the intersection; that at the time of the impact the Payne vehicle was coming towards him, that it had completed its turn; that he was approximately a sixteenth of a mile from the accident; that he saw the other vehicle hit the Payne vehicle in the side; that he could see the Payne vehicle's headlights just before the accident and they were directed towards him; that the Payne vehicle had negotiated the turn and was heading south at the time of the accident and that the driver of his vehicle was from Ohio and is presently in the service, and, therefore, not able to be pesent.

Plaintiff testified that on the date in question he worked at the Dixon State School as a maintenance repairman in charge of all the lighting, changing lights, fixtures and related matters; that he stopped for a drink after work and then went on home; that shortly thereafter the defendant arrived and asked him if he wanted to take a ride; that they went to a tavern in Harmon, Illinois, where he had one drink and then to another tavern where he had another drink; that the defendant had a small beer at one of the taverns; that from Harmon they proceeded to Route 26 and across 26 onto the Walton Spur; that the last that he recalled was a point on the Walton Spur where it began to make its curve south towards Walton; that the defendant was going 45 to 50 m. p. h. at this time; that he remembered the slam-

ming brakes; that he went through the windshield and that he never saw the Payne vehicle.

The defendant testified that on the date of the accident he got off work at about three o'clock; that he arrived home at four, read a little bit, watched television and ate supper; that at seven o'clock or a little before, he left his home and went to the plaintiff's home where he stayed approximately ten to fifteen minutes; that they both left for Harmon, Illinois, where they arrived at 7:30 p. m.; that he had nothing to drink at the first tavern they visited in Harmon but at the next tavern in Harmon he ordered a beer and talked to a nieghbor; that they left this tavern at eight o'clock and proceeded towards Route 26 when they decided to go to Amboy by proceeding east on the Walton Spur; that he had his lights on; that he approached the Walton Spur curve going 60 to 65 m. p. h. and slowed down as he proceeded east going onto the gravel road; that he was in the eastbound lane and never left that lane of traffic up to the moment of impact; that he estimated his speed as he entered the gravel road at 35 to 45 m. p. h.; that the Payne vehicle was about one-car length to the east of the intersection with its lights on; that he did not observe any turn signals on the vehicle; that he had his eyes on the Payne vehicle up until the moment of impact; that the vehicle started to make a left turn and he hit it; that at the time he hit the vehicle he was at about a 45-degree angle to it and that the Payne vehicle was in the southeast quadrant of the intersection at the time of impact.

With regard to injuries it appears that the plaintiff suffered deep facial lacerations of the forehead, face and nose requiring 100 sutures, a fractured dislocation of the right ankle and a cerebral concussion, along with much loss of blood. The nose was almost divided. The right ankle was in a cast for over three months and the plaintiff was not allowed to bear weight on it. The treat-

ing physician testified to a destruction of the normal relationship of the soft tissues in the ankle as well as past and future pain in the ankle, foot and face. The plaintiff received physiotherapy three times a week over a six-month period from November 23, 1966, to May 10, 1967, consisting of ultrasound, heat, whirlpool and exercises. He frequently complained of pain and his x rays demonstrated arthritic changes in the ankle and foot which were a result of the injury. In the doctor's opinion the pain will be permanent and movement will aggravate the pain. There is some limitation in his ability to work. The scarring of the face is permanent, although plastic surgery may remove some of the scarring. There is a limitation of motion of the ankle. The doctor discharged him to return to work in July of 1967. Prior to the accident his general health was good and he had been a roller skating teacher in addition to being employed at the Dixon State School as an electrician. He was 48 years old, married with a family of three children and earned $4.65 per hour. Plaintiff's exhibits and out-of-pocket medical expenses totaled $1,066.65. The personnel director of the Dixon State School testified that the plaintiff lost $3,083 in wages during 1966 from the time of the accident to the end of the year. Up until July 24, 1967, he would have earned approximately $5,252. Lost wages thus totaled $8,335.

The defendant argues the plaintiff had the same opportunity to see everything that the defendant saw and at no time did he see the Payne vehicle; also, that if the defendant were traveling at an excessive speed, the plaintiff had a duty to so inform the defendant and he did not. The jury heard and considered not only this evidence but all of the foregoing evidence on the issues of whether or not the plaintiff was free from contributory wilful and wanton misconduct and whether or not defendant was guilty of wilful and wanton misconduct. The only additional basis presented in the record from which con-

tributory wilful and wanton misconduct could be found against the plaintiff was his participation in the drinking by the defendant and then voluntarily getting into the car driven by him. The question of whether plaintiff's voluntary participation in the drinking and his voluntary subjection of himself to the peril of riding with a person who had one drink constituted contributory wilful and wanton misconduct was a question of fact for the jury to decide. Such evidentiary matters are traditionally within the province of the jury. The evidence, viewed in its aspect most favorable to the plaintiff, does not unquestionably favor the defendant so that the verdict based on that evidence must be reversed as a matter of law. Ryg v. Brue, 91 Ill App2d 229, 233, 233 NE2d 761 (1968).

█ Defendant complains that the court erroneously denied his post-trial motion for judgment notwithstanding the verdict. This does not call upon us to substitute our judgment for that of the jury. It only calls upon us to determine whether all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict based thereon could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967); Neubauer v. Coca Cola Bottling Co. of Chicago, 96 Ill App 2d 18, 26, 238 NE2d 437 (1968); Johanneson v. Ring, 82 Ill App2d 340, 345–346, 226 NE2d 291 (1967). We cannot say that such is the case.

█ Likewise, the trial court's denial of the defendant's post-trial motion for a new trial generally must also be affirmed. A jury's resolution of disputed factual questions may not be set aside because the judge believes a different conclusion more reasonable. Guthrie v. Van Hyfte, 36 Ill2d 252, 260, 222 NE2d 492 (1966). This court may substitute its judgment for that of the jury only where the jury's verdict is palpably erroneous and wholly unwarranted from the manifest weight of the

evidence. Tihay v. Aurora City Lines, 79 Ill App2d 107, 113, 223 NE2d 771 (1967). Although the evidence is conflicting there is ample basis for the jury to find on behalf of the plaintiff against his driver and to find that Payne was struck in the side after he had executed the turn. Such a finding is supported by the testimony of the independent witness and the position of the vehicles without any reliance upon the testimony of the parties.

■ The defendant's instruction No. 10 (IPI 72.05) was given. This instruction paraphrased the Illinois "Guest Statute" (Ill Rev Stats 1965, c 95½, § 9–201). Notes on use for this particular instruction, IPI, page 265, state that either IPI instruction 72.01 or 72.02, which define "guest," should be given with IPI instruction 72.05. The defendant offered IPI instruction 72.01 and upon objection, the court refused the instruction. The defendant claims such refusal was error. It would have been error had the question of the plaintiff's status in the automobile been in issue; however, it was never in issue. See Notes on Use, IPI 258, as to when IPI instruction 72.01 should be used.

■ Defendant appeals directly to this court, from the order of the trial court granting the plaintiff a new trial on damages only, upon a Notice of Appeal filed with the trial court. Leave was not granted nor was application made under Supreme Court Rule 306(a) which provides in part:

> "An appeal may be taken from an order of the circuit court granting a new trial only on the allowance by the Appellate Court of a petition for leave to appeal . . . ."

The Supreme Court long ago held that it was the intention of this provision that no appeal should be taken from an order granting a new trial except after first obtaining leave of the Appellate Court. Baumgardner v. Boyer, 384

Ill 584, 591, 52 NE2d 247 (1943); Matyskiel v. Bernat, 85 Ill App2d 175, 179, 228 NE2d 746 (1967).

■ Illinois reviewing courts have dismissed attempted direct appeals from orders vacating judgments and granting new trials and have held that provisions of the Leave-to-Appeal Statute had to be followed. Where a rule or statute expressly outlines the procedure to be taken on appeal, said procedure must be followed exactly. In this case, defendant failed to follow the prescribed procedures with regard to that portion of the trial judge's order granting a new trial on the issue of damages only and, therefore, that assignment of error should not be considered by this court. Rodriguez v. Chicago Transit Authority, 58 Ill App2d 150, 162–163, 206 NE2d 828 (1965).

Notwithstanding this fatal defect we will determine whether or not the trial court erred in granting the plaintiff a new trial as to damages only. The medical and hospital bills total $1,066.55; lost wages total $8,335. The record clearly establishes an arthritic injury of the ankle caused by the accident which injury is permanent and which will probably cause pain. The treating physician had no estimate of the future cost of medical treatment nor the cost of plastic surgery to correct the obvious scarring on the face but he estimated that the scarring and pain were permanent.

■■ When it is clear that the verdict of the jury is a result of a compromise of the liability, then a new trial in general must be ordered by the trial court. Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 46, 139 NE2d 275 (1956). On the other hand, if the liability is clear and the jury improperly assesses the damages or disregarded important elements of damages, the court may then, at its discretion, order a new trial on the issue of damages only. King v. City of Chicago, 53 Ill App2d 484, 486–487, 202 NE2d 839 (1964), McManus v. Feist, 76 Ill App2d 99, 103–104, 221 NE2d 418 (1966).

The trial court is granted discretion in determining whether or not it should grant a new trial and its determination, particularly in granting a new trial, will not be disturbed unless it is affirmatively shown that there is a clear abuse of such discretion. Greater latitude is allowed a trial court in granting a new trial than in denying one. Lombard Park Dist. v. Chicago Title & Trust Co., 103 Ill App2d 1, 242 NE2d 440, 445–446 (1968). No abuse of discretion is reflected by the actions of the trial court in this case.

The judgment of the trial court is affirmed and the cause is remanded for further proceeding.

Affirmed and remanded.

DAVIS and ABRAHAMSON, JJ., concur.