ESTELLA M. DAEMICKE, Plaintiff-Appellant, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

(No. 55205;

First District—May 5, 1972.

*Rehearing denied June 21, 1972.*

William M. Daemicke, of Chicago, for appellant.

James G. O'Donahue, O. R. Hamlink, Jerome F. Dixon, and John E. Wilson, all of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

In a suit to recover damages for personal injury, judgment was rendered on a jury verdict in favor of defendant. After the denial of plaintiff's post-trial motion, plaintiff prosecuted this appeal, raising two issues: (1) that the verdict was a product of prejudicial conduct by defense counsel, and (2) that the verdict was contrary to law and to the manifest weight of the evidence.

The testimony at trial brought out the following facts: On the afternoon of September 10, 1963, plaintiff, then age 68, and her friend, Martha Miller, walked to the corner of 69th and Halsted Streets to wait for a bus. When the bus arrived, it remained in the street about 10 feet from the curb, requiring plaintiff and the others at the bus stop to step off the curb and to board the bus from the street. The curb was from 6 to 12 inches high, and the first step of the bus was from 12 to 18 inches above

street level. Plaintiff, holding onto one side for support, boarded the bus with one step, and as she was taking the second step, her right leg turned under her, and she fell. She screamed, "my leg, my leg." The bus driver said, "hurry, hurry, lady," but plaintiff could not move, either to climb the remaining steps or to get off the bus. The bus driver made no move to assist her. A uniformed CTA supervisor or starter who had been standing across the street came over and said, "I'll get her off." He helped plaintiff off the bus and onto the curb, and after telling her to "hang onto the mailbox" which was on the sidewalk, he walked away.

Approximately 10 people boarded the bus before plaintiff did, and about six or seven people got on the bus after plaintiff had been helped off. After plaintiff had been assisted from the bus, Martha Miller stayed with her and called for a cab. While waiting for the cab, plaintiff sat on a stool which was given her by the man who ran a nearby newsstand. Upon reaching plaintiff's home, Mrs. Miller and the cab driver helped plaintiff into her apartment, as she was having great difficulty in getting up the stairs. Mrs. Miller, discovering that plaintiff had a cane in the apartment, believed that plaintiff would be all right, and soon left. She had been with plaintiff on prior occasions when plaintiff had had no trouble in boarding busses despite their high steps.

When plaintiff was alone, she became aware that her right knee was swollen and "terribly painful." She used the cane to try to get to the telephone, but she fell again and lay on the floor for three hours until her son found her and took her to the hospital. Even with the aid of her son, plaintiff had a difficult time in descending the stairs, and fell once more. Upon arriving at the hospital, plaintiff received emergency care, and two days later, her leg was operated on. After the operation, she wore a cast on her leg from the hip down, and three weeks later, a lighter cast was substituted. When the cast was removed, she had whirlpool therapy and then began to walk, using a walker as a brace. Before the accident, she had no trouble walking, but now she walks slowly and has trouble with stairs and curbs.

The orthopedic surgeon who testified at trial was the doctor who examined plaintiff when she was first brought into the emergency room and who operated on plaintiff's leg two days later. He took plaintiff's case history and reported that plaintiff had informed him that the accident occurred when she was bumped by another person as she was getting on a CTA bus. He testified at length as to the emergency treatment he rendered to plaintiff at the hospital, and to the later surgery which he performed. There was resultant loss of some motion in her leg which he testified was permanent, but not apt to require medical attention in the future.

Plaintiff's amended complaint alleged that defendant was negligent in one or more of the following ways:

"(a) Failing to select a reasonably safe place for plaintiff to board the bus;

(b) Failing to take proper precautions for the safety of passengers, including plaintiff, while they boarded said bus;

(c) Failing to stop said bus for the purpose of loading passengers within the proper area; and

(d) Employing an unreasonably dangerous and defective bus in that the front step, by which passengers gain entrance to the interior of said bus, was too high from the ground level from which passengers boarded."

Defendant filed an answer, but, at the trial, defendant offered no testimony and presented no evidence.

■■ Set forth in plaintiff's brief are five specific comments made by defense counsel during his closing argument which plaintiff claims were so prejudicial as to result in a verdict based not upon the evidence but upon aroused passions. In two instances, plaintiff made no objections at the time the comments were made, and they cannot now be raised on appeal. (*County of Cook v. Colonial Oil Corp.*, 15 Ill.2d 67, 75, 153 N.E.2d 844, 848.) We shall, however, discuss the other three remarks.

■■ Plaintiff's own testimony at trial brought out the fact that she had a cane in her apartment prior to the accident. During closing arguments, defense counsel stated:

"If there was something wrong with this lady [plaintiff] before the accident, did it possibly contribute  *  *  *  [objection sustained]. Well, may I ask, ladies and gentlemen of the jury, why she mentioned and knew she had a cane at home  *  *  *  so that when she got home, the cane would be there?  *  *  *"

Plaintiff argues that the highly prejudicial effect of the question was not removed by the court's ruling in sustaining the objection since the impression still left in the jury's mind was that defendant's negligence could not have caused plaintiff's injury because plaintiff suffered from a physical ailment before the accident took place. Such an inference could not have been given to the jury after defense counsel's first quoted remark, to which objection was sustained, since no mention had yet been made of the cane. And since plaintiff did not object to defense counsel's second quoted remark, which did concern the cane, plaintiff, again, is barred from now raising the point for the first time, although we do not attach to it the high degree of prejudice which plaintiff does, in any event. *County of Cook v. Colonial Oil Corp.*, 15 Ill.2d 67, 75, 153 N.E.2d 844, 848.

In his closing argument, defense counsel also said:

"Most of you * * * have ridden in these Transit Authority vehicles. How high is the step on them as an average? About so high? [indicating a foot high] Nothing unusual about that * * *. Think of other busses you've been on; perhaps a Greyhound, a Western, some other interurban bus here or there. Aren't they all approximately the same height, the same steps?"

Plaintiff, urging that only one specific bus of one bus company was in issue, objected to that line of argument, and the objection was sustained. Plaintiff again contends that the sustaining of the objection to the argument could not cure the prejudicial effect, because the introduction of foreign matters could only tend to cloud the issues and confuse the jury. Since the objection was sustained, no further reference was made to the height of the steps of other busses, and the jury was properly instructed to disregard the comment, any prejudice there may have been was insubstantial. See *Smith v. Raup*, 296 Ill.App. 171, 177, 15 N.E.2d 936, 938-939.

Plaintiff also urges prejudicial error was committed when defense counsel argued to the jury:

"Now they talk about an instruction that the passenger has to have a safe place to board or light. Did you hear any evidence here as to any reason why the bus couldn't get into the curb? Now why wouldn't a bus at 69th and Halsted at 1:30 or a quarter * * * [objection sustained]."

Plaintiff contends that she was not under a burden to establish the motives or reasons for the bus driver's not having pulled to the curb, but that the remark of defense counsel inferred not only that plaintiff had such a duty, but that she had failed to produce enough evidence to overcome it. Here, again, the objection was sustained, the jury was instructed to disregard the comment, and no prejudice was incurred.

Plaintiff next contends that her positive, uncontroverted testimony made out a *prima facie* case which could not properly be disregarded by the trier of fact in the absence of any evidence on behalf of defendant. ■■ While we believe that the trial court properly permitted the case to go to the jury, we nevertheless find ample evidence in the record to sustain the verdict and judgment for defendant. There was testimony that other people had boarded the bus both before plaintiff, and after she had been helped off. Martha Miller testified that she had previously ridden on busses with plaintiff and that plaintiff had never had difficulty in boarding other busses despite their high steps. Plaintiff's own testimony was that she was apparently boarding the bus without difficulty since she had successfully negotiated the first step (the one allegedly

too high off the ground) and it was only when she was about to take the second step that her right leg turned under her, causing her to fall. This evidence could have convinced the jury that it was not the boarding place or the step height which had caused plaintiff to fall and injure herself and, therefore, the jury had an adequate basis for concluding that the bus was in a reasonably safe place for boarding and that the step was not unreasonably high.

■■ Plaintiff's amended complaint did obliquely allege that defendant was negligent in failing to provide plaintiff with prompt medical attention. However, despite the fact that it was shown that defendant did not offer such assistance as might have been expected from a public carrier, there was no proof that plaintiff's injury was either caused or aggravated by defendant's failure to remove her safely from the bus or immediately call an ambulance.

■■ In our opinion, the jury's verdict was not contrary to the manifest weight of the evidence. The judgment of the Circuit Court is affirmed. *Hamas v. Payne,* 107 Ill.App.2d 316, 323-324, 246 N.E.2d 1, 5.

Judgment affirmed.

LORENZ, P. J., and DRUCKER, J., concur.