Annabel Thompson, Administratrix of the Estate of Cyril A. Thompson, Deceased, Appellee, v. David Riemer and Fred Steigerwald, Appellants.

Gen. No. 8,921.

Opinion filed January 17, 1936.

LONDRIGAN & LONDRIGAN, of Springfield, for appellants.

TRAPP & TRAPP, of Lincoln, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee in the circuit court of Logan county against

appellants, David Riemer, the owner, and Fred Steiger-wald, the driver of a motor tractor with trailer attached. The complaint alleges that plaintiff's intestate, Cyril A. Thompson, was riding as a passenger in the rear seat of an automobile owned by Walter C. Bower and being driven by Fred C. Dehner.

It charges appellants with carelessly and negligently operating a motor tractor with trailer attached at an excessive rate of speed; that the pavement was divided into two traffic lanes and the motor vehicle in which plaintiff's intestate was being carried was driven on the east traffic lane, northward, towards the city of Lincoln, and defendants carelessly and in violation of a statute drove and operated said motor tractor southward, in whole or in part upon the east traffic lane and by reason thereof the same was brought into collision with and ran against a motor vehicle in which plaintiff's intestate was being carried and thereby caused the death of said Cyril A. Thompson. Other charges of negligence were contained in the complaint but no question is raised as to its sufficiency.

Defendants answered denying that plaintiff's intestate was in the exercise of due care for his own safety, and further denied that the death of said Cyril A. Thompson was caused by the negligence of the defendants. The cause was submitted to a jury. A verdict was returned finding defendants guilty and assessing plaintiff's damages at $1,000 and the court entered a judgment upon the verdict.

From the testimony it appears that Walter C. Bower who was the owner of a 1932 Ford sedan met Fred C. Dehner and Cyril A. Thompson at a soft ball game on the playgrounds across from the high school in Lincoln on the evening of August 16, 1935. Thompson umpired the first game and Dehner played in one of the games. After the game they all went to the K. C. barbecue at Springfield, Illinois, in Bower's car. They arrived there about 11:30 p. m., and about 2:00 a. m.

they left the barbecue and started for Lincoln. Dehner was driving the car and Bower was in the seat beside him, and Thompson was in the back seat and had lain down and was asleep before they arrived at the city limits of Springfield. It is about 30 miles from Springfield to Lincoln. They stopped at Elkhart, which is about 10 miles from Lincoln, and Dehner and Bower got out of the car and Dehner got something to eat. Thompson was still sleeping in the car. After leaving Elkhart, Dehner continued to drive and Bower sat beside him. Bower went to sleep after leaving Elkhart and was not awake so as to observe anything that occurred from that time on until he regained consciousness in the hospital in Lincoln.

The accident in which Cyril A. Thompson lost his life happened on U. S. Route No. 66, a short distance south of Lincoln. There is a bridge over the old channel of Salt Creek, and just north of the bridge is a hill and from the foot of the hill the highway extends northeast and southwest parallel to the Alton Railroad. South of the bridge over the main channel of Salt Creek, and about two-tenths of a mile, there is another bridge over a drainage channel. From the south end of the Salt Creek bridge to the turn, which is a distance of about 1,000 feet, the road is straight, then it curves to the left and, after a short distance, curves to the right again. Bailey's Tourist's Camp is located at this curve, and from the foot of the hill to this camp is about 2,000 feet and the road is straight. About 7:00 o'clock p. m., Chicago time, the defendant, Fred Steigerwald, left Chicago driving a truck. He was accompanied by his brother, Casper, a stepson of David Riemer, one of the defendants. About 3:30 they were coming to the bridge over the old Salt Creek channel. The defendant, Fred Steigerwald, was driving and his brother, Casper, sat next to him.

There is very little conflict in the evidence. The only persons who testified as to what took place were the

driver of Bower's car, Fred C. Dehner, Casper Steigerwald and Othello Carroll, the driver of a truck that was following the truck driven by Fred Steigerwald.

Dehner testified that as he drove north around the curve near Bailey's camp he was driving about 45 miles per hour and made a wide turn and was on the left-hand side of the road and he saw the truck coming and was pulling over to the right side of the road, and he then saw the truck pulling over to his side of the road and so he jerked his car back to the left again and the collision occurred. He testified that the truck was on his side of the black line when the collision occurred. The right front of the car drove into the right front of the truck. When his car came to a stop Cyril A. Thompson was lying parallel with the car on the ground with his head towards the front and Walter C. Bower was lying over Cyril Thompson with his feet in the car.

Othello Carroll, driver of the truck following the truck of defendants, testified that he saw the car coming around the curve at the tourists' camp on the west side of the road, and the truck in front of him was on the west side of the road. When the car made the curve it straightened up and was on the east side of the line and then crossed back to the west side again, and the next thing he saw the truck do was to turn left, and immediately after that there was a crash.

Casper Steigerwald, brother of Fred, testified he saw a car coming from the south, taking the corner wide, on the west side of the line. After making the curve he straightened out into his right lane and then pulled right out again. When he got too close our truck swung left into the east lane. The car struck between the fender and the front door on the right side of the tractor. It is apparent that both the car and the truck were on the wrong side of the road at the time of the collision.

Appellants say there is no evidence tending to prove them guilty of any negligence which could have been one of the contributing causes of the accident.

It was the province of the jury to determine all questions of fact in the case including the question as to whether appellants were guilty of negligence which contributed to the accident, and from the evidence we are of opinion that the jury was warranted in finding appellants guilty of such negligence.

Appellants contend that there was no evidence of the use of due care and caution on the part of plaintiff's intestate; that there was no question of fact to be submitted to the jury upon the question of whether or not the deceased was in the exercise of due care and caution for his own safety, and the court should have directed a verdict for the defendants at the close of plaintiff's evidence; that there was no direct testimony and no inference of the use of due care and caution can be drawn from the evidence; that whether there is evidence tending to show due care and caution is a question of law.

It is true that it was incumbent upon plaintiff to prove that her intestate was, immediately prior to and at the time of the accident, in the exercise of due care and caution for his own safety. That is a question of fact which must be determined by the circumstances attending and surrounding his death. Whether the evidence tends to prove such care is a question of law. Ordinarily the question of contributory negligence is one of fact for the jury. *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246. It is not indispensable that the question as to whether plaintiff's intestate was in the exercise of due care and caution for his own safety should be established by direct proof. "It may be shown by circumstantial evidence, or, as has been sometimes said, it may be inferred by the jury from circumstances appearing in the proof." *Chicago & E. I. R. Co. v. Beaver,* 199 Ill. 34.

"There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise, it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances." *Stack v. East St. Louis & Suburban Ry. Co.*, 245 Ill. 308.

The evidence shows that Dehner had driven a car for 12 years and Bower had driven one for 14 or 15 years; that Dehner, Bower and Thompson were well acquainted and that it was customary for them to go around together. Dehner had driven Bower's car lots of times and almost every time they went anywhere together. Dehner was acquainted with this highway and the three of them earlier in the evening had passed over it in going to Springfield. There is no evidence that in any way tends to prove that there was anything in the conditions of the traffic, the roadway itself, or the weather conditions that could reasonably cause anyone to anticipate that there might be danger or any dangerous condition to be avoided. Both on the trip to Springfield and on the return, Bower, the owner of the car, sat in the front seat beside Dehner. This trip was being made late at night over a concrete public highway in the country.

We are of the opinion that the conduct of plaintiff's intestate was consistent with what a man of ordinary prudence would do under like circumstances. You cannot single out the fact that he was asleep in the rear seat of the automobile and from that fact alone determine as a matter of law that there was no evidence tending to prove due care on his part.

This case is clearly distinguishable from those cases holding that it is the duty of a passenger in a vehicle to be on the lookout for danger at places where it is

known that danger is likely to exist. The court properly submitted the question of contributory negligence to the jury. In the case of *Smith v. Courtney,* 281 Ill. App. 530, where the facts were somewhat similar, it was held that the question of contributory negligence was a question for the jury.

From the evidence in this case we cannot say that plaintiff's intestate was not in the exercise of ordinary care for his own safety or that his conduct was not consistent with that of an ordinarily prudent man under like circumstances.

The Court of Appeals of New York in the case of *Nelson v. Nygren,* 259 N. Y. 71, 181 N. E. 52, held that the conduct of a guest in voluntarily going to sleep with the consent of the driver, while riding in an automobile, did not constitute contributory negligence as a matter of law, so as to preclude recovery against the driver who was found guilty of negligence.

In this case Nelson, the plaintiff, and Nygren, the defendant, left Olean at 12:30 p. m. in the defendant's car to drive to Maple Springs, a distance of about 75 miles. As they left Olean the plaintiff told the defendant he would drive when they reached Randolph, that being about the halfway point, and to awaken him. Nygren assented and Nelson went to sleep. Before reaching Randolph and while Nelson was asleep, the car left the highway and Nelson was injured.

After reviewing a number of cases decided by the courts of last resort in different States, the court said: "In the last analysis, the rule governing a guest riding in an automobile is that he should conduct himself as an ordinarily prudent person would, under like circumstances. If he does, he cannot be held negligent as a matter of law."

Finding no reversible error the judgment of the circuit court is affirmed.

*Affirmed.*