Minnie Kitch, Plaintiff-Appellee, v. William Adkins, Defendant-Appellant.

Gen. No. 9,798.

Opinion filed March 11, 1952. Rehearing denied May 6, 1952. Released for publication May 6, 1952.

MONROE & McGAUGHEY, of Decatur, for appellant.

HENSON, MORTHLAND & HENSON, of Decatur, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is an appeal in a personal injury action arising out of an automobile accident, wherein Minnie Kitch is plaintiff-appellee, and William Adkins is defendant-appellant. The jury returned a verdict in favor of plaintiff in the sum of $10,000 upon which judgment was entered, after denial of defendant's motion for judgment notwithstanding the verdict and motion for new trial. This appeal follows.

It appears that on July 3, 1948, at about 7 p. m., the plaintiff was riding in a truck owned and occupied by defendant Adkins, but being driven by her husband, Eugene Kitch, on south Franklin street, in the City of Decatur, Illinois. The plaintiff was seated in the middle of the seat in the truck, and defendant was seated at her right. The truck went over the curb of the street and struck a tree, by reason of which plaintiff was injured. The amended complaint charged that plaintiff was free from contributory wilful and wanton misconduct; that defendant, in violation of his duty, wilfully and wantonly failed to control the driver of

343

the truck and allowed him to operate the same at an unreasonable speed, allowed him to operate the same while under the influence of intoxicating liquor and allowed him to operate the same without the driver keeping a proper lookout or keeping the truck under control.

Upon appeal it is urged that plaintiff was guilty of contributory wilful and wanton misconduct as a matter of law; that the complaint does not state a cause of action for wilful and wanton misconduct; that plaintiff could not maintain her action because the truck was operated by her husband; that the evidence shows no wrongful conduct on the part of defendant; that an incorrect instruction was given on behalf of plaintiff and that a correct instruction was refused on behalf of defendant; that the verdict was contrary to the manifest weight of the evidence; that the judgment should be reversed or in the alternative that a new trial should have been granted.

██ The court will first consider whether the complaint states a cause of action for wilful and wanton misconduct on the part of defendant. Plaintiff concedes that her action is predicated upon the case of *Palmer v. Miller,* 380 Ill. 256, wherein the factual situation appeared to be as follows: Defendant, a minor, was injured at a dance; a friend drove defendant's car to seek medical care; plaintiff, a professional nurse, upon request, was a passenger in the car to assist in caring for defendant; an accident followed in which plaintiff was injured. Plaintiff's suit was based upon the theory that the driver of the car was the agent of the defendant, but in reversing the case in which there was a judgment for plaintiff, the court stated that a minor could not make a contract and therefore could not have named the driver as his agent. The following statement appears in the opinion of the court: ''The rule is that liability for damage caused by the negli-

gent act of the driver of an automobile, not arising under the doctrine of respondeat superior, does not attach against a person other than the driver, unless that person is the owner of the automobile, or possesses the right to control the driving of it, and such owner or possessor is riding in the automobile at the time of the injury and negligently fails to properly control the driver. Where the owner of the car is riding in it, he has not only the right to possession of it but has such possession and he necessarily retains the power and the right of controlling the manner in which it is being driven unless it is shown that he has contracted away or abandoned that right. He likewise has the duty to control the driver. The inference is that the owner knew of the improper operation of the car and became responsible for the consequences of such operation. (Cases cited). . . . In those cases where the charge is that the appellant had the right to control and direct the use of the car, and was assisting in driving the same, using the driver as an instrumentality, such charge is an allegation of joint action and joint negligence and so amounts to a charge of negligence against the appellant personally, based upon his own acts. (Cases cited). . . . Had the charge in the case before us been that the appellant, by reason of the facts of the case, owed a duty to control the driver, which he failed or refused to perform, whereby the damage was occasioned, the proof would not necessarily be the same as that required to sustain the charge as made.'' A reading of the amended complaint in this case clearly indicates that it does state a cause of action against defendant, because it charges that the defendant was the owner and in possession and control of the truck; that he owed a duty to plaintiff to properly control the driving and operation of such truck, but wilfully and wantonly failed to do so, and wilfully and wantonly allowed the driver to perform

the acts complained of. It is immaterial that the husband of plaintiff was the driver of the truck as he is not a defendant, need not have been mentioned in the complaint, and was referred to only as an instrumentality by which the defendant operated, drove, and controlled the truck.

The most important assignment of error relates to an evaluation of the conduct of plaintiff on the subject of contributory wilful and wanton misconduct. Because of its importance the evidence is rather fully summarized. The plaintiff testified that her husband and defendant, in the latter's truck, came to her home about 4 p. m. on July 3, 1948; the husband said they were ready to go to the races, she said she would go, and defendant said he was going also; the defendant driving, the three went to Hick's Tavern; she drank a half-bottle of beer; Adkins and Kitch each drank three or four bottles of beer; with defendant driving they then went to the Floyd Adkins' home in Decatur to see if he wanted to also go to the races; he refused defendant's invitation but said he would buy them a beer; defendant drove them to the Decatur Street Tavern; defendant and Kitch went into the tavern while plaintiff remained in the truck; they were gone about an hour and a half; she went into the tavern and told them it was time to go to the races; they were seated at a table with a bottle of beer before them; she went back to the truck; her husband got into the driver's seat and defendant sat to her right and they drove away; the truck was going about fifty-five miles an hour and was weaving; she said she was scared of their driving and asked them to take her home; the truck continued; later the husband-driver said he was going to stop at the home of plaintiff's father-in-law and witness said she did not want to stop there so they did not; later she again asked her husband to take her home and "they" just laughed at her; later as the

truck travelled on Franklin street, a boulevard, the driver lost control of the truck, it sideswiped a tree and hit another tree after going up over the curb and sidewalk; from an observation of her husband as he drove the truck she believed he was under the influence of intoxicating liquor; on the occasions when she requested that she be taken home, neither Kitch nor Adkins said or did anything about it, except when Kitch said he would take her to his father's home; no cars were on the street before the truck hit the tree. On cross-examination she stated that she now lives with her husband in Houston, Texas; that she and her husband talked about going to the races at Macon the night before the accident; that on the day in question the three of them were in Hick's Tavern about an hour or a little more; they were at Floyd Adkins' house about an hour; they then went to the Decatur Street Tavern but witness remained in the truck; when Kitch and Adkins came from the tavern and to the truck nothing was said as to which one was to drive but her husband got into the driver's seat; the truck went past the home of her father-in-law; at the time her husband made the suggestion that he would take her there; he was going too fast around corners and the car was swerving and she noticed that he was intoxicated; in her ten years of married life she had seen her husband intoxicated three or four times before this; just before they got to his folk's house she told her husband she didn't want to go there but that if he would stop the car she would get out and walk; he drove past the house without slowing or changing speed; later she asked them to stop the car and let her out; that she would walk; her husband said that he had messed with her long enough. On adverse examination the defendant Adkins testified that he and Kitch had been together during the day of July 3; they went to the Kitch home and talked about going to the races at

Macon; then they went to Hick's Tavern, stayed about an hour during which time he and Kitch each had two bottles of beer; before going to the Kitch home both had had something else to drink; at the tavern Mrs. Kitch ordered one bottle of beer but he didn't know how much of it she drank; they went to the home of Floyd Adkins and then to the Decatur Street Tavern; plaintiff remained in the truck; he and Kitch each had two bottles of beer; later plaintiff came in and asked if her husband was ready to go; he gave the car keys to Kitch and asked if he wanted to drive; from 9:30 a. m. until arriving at the Kitch home about 4 p. m. he and Kitch each had had five or six bottles of beer; witness was sober when he left the last tavern and so was Kitch; he heard plaintiff say as they were driving that she didn't want to go to the races and asked to be taken home; she also said she didn't want to stop at the house of his folks; she only made one statement to her husband and at no time asked that the truck be stopped so that she could get out and walk; the truck was travelling about thirty to thirty-five miles an hour just before the accident; witness never told the driver to stop and made no effort to stop the truck; earlier in the day they had been at Putman's Tavern and Keller's Tavern; were in the former about two hours and in the latter about an hour; neither had eaten anything except a sandwich; the remainder of the time they were just driving around. Plaintiff's witness, Eugene Kitch, the husband-driver, testified that he met defendant about the middle of the morning; they went to Keller's Tavern and each had two bottles of beer and remained there about forty-five minutes; they then went to Putman's Tavern in defendant's truck; each had about seven or eight bottles of beer; after going to the Kitch home in the afternoon to deliver some building material they and the plaintiff went to Hick's Tavern; plaintiff drank part or all of a

348

bottle of beer; he had three or four bottles of beer; he didn't know how many defendant had but he had been drinking along with them; they were in the tavern about an hour and a half; they drove to Floyd Adkins' house and then to the Decatur Street Tavern, but plaintiff stayed in the truck; each had a couple bottles of beer; the plaintiff later came in and said they had better get going; witness had the car keys when he got into the truck; he started to drive and remembered little that thereafter occurred because he had too much to drink, he was intoxicated. On cross-examination he stated that he and plaintiff drove to Decatur from Houston for the purpose of the trial; before he drove the truck at the occasion in question he was not conscious of being intoxicated; his wife said nothing to him about intoxication at that time. Witness stated that at the time his deposition was taken on April 5, 1950, he admitted that he had signed a statement January 20, 1949, in which he said that just prior to the collision a southbound car was approaching the truck on the wrong side of the street and that he swerved the truck to get out of the way, and that was the way the accident happened. The defendant in his own behalf testified that he and Kitch each had two bottles of beer at the Decatur Street Tavern; they left about 6:45 p. m.; Kitch was not then intoxicated; some time later plaintiff asked to be taken home; nothing more was said; Kitch drove in a straight line about twenty to twenty-five miles an hour; he did not skid around corners; later Kitch started to stop at his father's house but plaintiff said she didn't want to and wanted to go home; later plaintiff said, "Look out, Gene," the truck swerved and witness saw an on-coming car on the wrong side of the street going about thirty to thirty-five miles an hour; the truck glanced off one tree and hit another; plaintiff never asked to get out of the car and never complained about the way her hus-

band was driving; witness took no part in any conversation between the driver and his wife and she never addressed any remarks to the witness; witness was not intoxicated; nothing that Kitch did while driving indicated that he was intoxicated. On cross-examination he stated that he requested Kitch to drive the truck and gave him the keys; on two occasions plaintiff asked to be taken home, the second time was just before they reached the home of her father-in-law; from the time witness got in the truck until the accident he had not said a word nor was anything said to him; as to the reason for asking Kitch to drive, witness said he had been driving all day and was tired. Floyd Adkins testified that when defendant and Kitch left the Decatur Street Tavern they were not intoxicated. On cross-examination he said he did not know if they were under the influence of liquor. In rebuttal, plaintiff called Harold Moore who testified that he was on the porch of his mother's home reading a paper at and just before the accident; that the house was near the scene; the first thing that attracted his attention was a crash; he looked up and saw the truck "into the tree"; he didn't remember seeing any other car. On cross-examination he stated that he didn't know if there was another car on the street or not. This constituted all of the testimony other than the medical.

 In passing upon a motion for a directed verdict at the close of all the evidence, or upon a motion for judgment notwithstanding the verdict, the sole question is whether, admitting the evidence in favor of plaintiff to be true, that evidence together with all legitimate conclusions and inferences, fairly tends to sustain the cause of action. The court has no right to pass upon the credibility of witnesses, to consider any purported impeachments, the weight thereof, or the weight of the testimony, since the motion admits the evidence in favor of plaintiff to be true. (*Novak v.*

*Illinois Central R. Co.,* 334 Ill. App. 241.) Applying this rule it is the opinion of the court that it was not error to deny the motion for a directed verdict at the close of all the evidence, or to deny the motion for judgment notwithstanding the verdict. There was sufficient evidence on the question of both the conduct of plaintiff and the defendant for the case to go to the jury. It cannot be said in this case that all reasonable minds, under the facts stated, with reasonable inferences to be drawn therefrom, would conclude that plaintiff was guilty of contributory wilful and wanton misconduct, or that defendant was not guilty of wilful and wanton misconduct. Therefore such questions are not matters of law for the court, but matters of fact for the jury. (*Miller v. Vancil,* 339 Ill. App. 1.) Likewise this court finds that the verdict of the jury in these respects, was not against the manifest weight of the evidence, and that it was not error to deny the motion for new trial on this ground. As to the giving and refusing of instructions, an examination of all of the instructions indicates that the jury was fully and fairly instructed so as to give both sides a fair and impartial trial. The giving of plaintiff's instruction four is subject to criticism but such is not serious enough to amount to reversible error.

By reason of the foregoing, it is the opinion of this court that the judgment of the circuit court should be and is affirmed.

*Affirmed.*