Aurora National Bank of Aurora, Illinois, as Administrator of the Estate of William P. Knott, Jr., Deceased, and Aurora National Bank of Aurora, Illinois, as Administrator of the Estate of William P. Knott, Jr., for the Use of Margie May Knott, Plaintiffs-Appellees, v. Charles Galauner, as Administrator of the Estate of Willis Otto Hood, Melvin Burt, Individually and d/b/a Babe's Tavern, Paul Zaccaria, Individualy, and d/b/a Babe's Tavern, George Skiotes, Individually, and d/b/a 13th Club, Melvin Burt, d/b/a 13th Club, Jo Ann Wisneski, Individually, and d/b/a Jennie's Tavern, Defendants-Appellants.

Gen. No. 66–73.

Second District.

March 21, 1967.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellants.

Tyler and Peskind, and Charles L. Hughes, all of Aurora, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from the Circuit Court of Kane County. The action was for the death of plaintiff's decedent while a guest in a motor vehicle being operated by defendant's decedent. The case was submitted to a jury which returned a verdict in favor of the defendant. On a post-trial motion, the trial court set aside the jury's verdict and the case for retrial.

The accident, which was fatal to both William P. Knott, Jr., plaintiff's decedent, and to defendant's decedent, Willis Otto Hood, occurred about 1:30 on the morning of June 25, 1962, on a road known as County Farm Road, west of Illinois Route #47 in Kane County, Illinois. Knott and Hood, who were fellow workers for a pipeline company, attended the drag races at Oswego, Illinois, on a Sunday afternoon. After the races they drove in Hood's pickup truck to the mobile home of a fellow worker, Saulsberry, which was about a mile east of Coal City. There is evidence that the two had been drinking prior to their arrival at Saulsberry's home.

At about 6:00 p. m. that evening the three men got into the pickup truck belonging to Hood and drove to a tavern. Saulsberry was the driver. After drinking some beer at the first tavern they then drove to a second tavern where they continued to drink beer. From there they proceeded to a third tavern where they continued drink-

ing beer until closing time. Saulsberry testified that all three of the men drank their beers very fast. Upon leaving the last tavern, Saulsberry drove back to the trailer where he lived, arriving about 1:00 a. m. Saulsberry's wife testified that when she heard the pickup truck return, she looked out the window and saw Saulsberry get out of the driver's seat. Hood was sitting in the middle and Knott was on the right-hand side. She said it appeared that Knott was asleep. She further testified that her husband stood by the truck apparently talking to Hood for about 15 to 20 minutes before he came in, and Hood started driving home. Saulsberry himself testified that he had asked Hood and Knott to stay the night with him. He testified they refused and then drove away. He could not recall whether Knott answered him. In fact, he did not recall that he had talked to Hood for 15 to 20 minutes, as his wife testified. Two deputy Sheriffs testified that about 1:30 or 2:00 a. m. they saw the pickup truck approaching them at a high rate of speed, swerving from side to side. They were forced into a ditch to avoid being struck by it. They commenced pursuit of the speeding truck and observed it run a stop sign at Route #47. They lost sight of it momentarily as it went down a slight dip in County Farm Road. Just beyond the dip in County Farm Road is a narrow bridge. The truck apparently struck the abutment and both driver and passenger were killed.

The sole question on this appeal is whether the trial court erred in holding that, as a matter of law, plaintiff's decedent could not be guilty of any wilful and wanton misconduct and that, therefore, the verdict in favor of the defendant was against the manifest weight of the evidence. The trial judge in granting the motion for a new trial stated, "It seems to me that the plaintiff's decedent could not be guilty of contributory wilful and wanton misconduct since all the evidence and circumstances in the case indicate that he must have been asleep at the time

134

the drivers switched, and there is nothing to indicate that he ever regained consciousness before he was killed. From the evidence it also seems quite clear that the driver of the truck was wilful and wanton in his conduct."

Plaintiff argues that proof of his decedent's drinking, standing alone, is not sufficient to overcome the prima facie proof of habit of plaintiff's due care, and argues that since his decedent was asleep when there was a switch in drivers, it cannot be said that he subjected himself to the peril of riding with defendant.

██ We cannot concur in this contention in view of the happenings on the fatal evening. When the three men left the last tavern to return to the Saulsberry home, Saulsberry was at the wheel. However, the plaintiff should have been aware of the fact that when Saulsberry left the truck that he or Hood would have to drive on the return trip to Aurora. We cannot agree with the Court below that the fact that the plaintiff was asleep at the time the drivers switched was sufficient to permit the Court to hold that the plaintiff could not have been guilty of wilful, wanton conduct as a matter of law.

██ ██ The fact that the plaintiff was asleep at the time of the accident should be considered along with all of the other evidentiary facts by the jury in making a determination. Dursch v. Fair, 61 Ill App2d 273, 285, 209 NE2d 509; Turnbull v. Porter, 55 Ill App2d 374, 374o and 374p, 206 NE2d 97. Nor does the fact that he was asleep mean that as a matter of law his actions preceding the accident could not have constituted wilful and wanton conduct. What constitutes wilful and wanton conduct depends on the facts in each case and cannot be categorically stated. Likewise, whether plaintiff's decedent was guilty of contributory wilful and wanton misconduct in participating in the drinking, to the extent involved in the case at bar, and in thereafter subjecting himself to the peril of riding with the defendant's decedent, was a jury question. Under the circumstances, the jury could

135

have found that the plaintiff's decedent was either asleep or in an intoxicated stupor at the time of the accident. Anderson v. Launer, 13 Ill App2d 530, 536, 537, 142 NE2d 838.

Under the facts herein related it is our opinion that this issue was properly to be determined by the jury and the trial court was in error in granting a new trial on the basis herein set forth. Accordingly, the judgment granting a new trial is reversed.

Judgment reversed.

DAVIS, P. J. and BURT, J., concur.