Dennis Bergman, Plaintiff-Appellant, *v.* Mark Leitschuh, Defendant-Appellee.

(No. 74-359;

Fifth District—August 5, 1975.

Dennis McGrady, Jr., of McGrady, Madden & McGrady, of Gillespie, for appellant.

James L. Reed, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the plaintiff, Dennis Bergman, from those portions of "Judgment Order" entered by the circuit court of Montgomery County which awarded the plaintiff the sum of $15,000. The plaintiff does not appeal "from the judgment upon the verdict of liability against the" defendant, Mark Leitschuh. No notice of appeal was filed by the defendant.

The issues raised by the plaintiff consist of the following: (1) Whether it was error to allow evidence of plaintiff's intoxication to be presented by the defendant as evidence of contributory wilful and wanton conduct; (2) Whether the trial court erred in admitting evidence concerning the defendant's past employment and recent marriage; (3) Whether the award of damages are inadequate, against the manifest weight of the evidence, and the result of passion and prejudice; and, (4) Whether this court has the power to remand this cause for a new trial on damages alone.

Since a brief summary of the facts concerning the events surrounding the plaintiff's injuries will aid in our discussion of the first of these issues, they will be recited at this juncture. On the evening of November 9, 1969, the plaintiff, the defendant, and several other persons gathered at Yaeger's Lake where they proceeded to consume various quantities of beer. According to the defendant, the plaintiff and another individual

went in a tavern and purchased the beer consumed by the group at Yaeger's Lake. Around 10 p.m. four members of the group, the plaintiff, the defendant, and their respective girl friends, began a trip back to town to pick up an individual who was to get off from work about that time. Prior to this trip the defendant had quarrelled with his girl friend. The defendant drove and his girl friend rode as a passenger in the front seat. The plaintiff and his girl friend rode in the back seat. The plaintiff was intoxicated when he entered defendant's automobile. And, while the defendant had consumed approximately seven cans of beer prior to the journey, he did not appear intoxicated; nor did the defendant believe his drinking impaired his driving. It was 2 or 3 miles along a 15-foot-wide country road from the lake to the place of collision.

On the journey, the plaintiff's girl friend (presently plaintiff's wife) asked the defendant "How does this car run?" whereupon the defendant stepped on the gas and accelerated to a speed betwen 70 and 100 miles per hour. The defendant's girl friend told the defendant to "go faster." Approximately one-fourth to one-half of a mile before the road upon which they were travelling ended in a T intersection marked with a stop sign, the plaintiff's girl friend told the defendant to slow down. The defendant testified that while he could see the stop sign from a distance of approximately one-half mile he did not attempt to stop until he was 300 yards from the intersection. At that time the defendant applied his brakes, placed his automatic transmission in low gear, and applied his emergency brake. The automobile skidded through the stop sign and into a hedge located across the intersection. The plaintiff suffered injury to his back as a result of this collision.

The plaintiff testified that he had no recollection of entering the defendant's car, nor of the speed at which the defendant drove the car. The plaintiff did not know if he had "passed out" or gone to sleep but he testified that it was probably a little of both. The plaintiff testified that "probably according to the law I [he] was drunk." The plaintiff believed that he lacked "full control" of his senses and that while he had full control of his eyesight his "speech might have been slurred." Just before the collision the plaintiff's girl friend shook the plaintiff and woke him up.

The plaintiff contends that "it was prejudicial error to allow the fact of plaintiff's intoxication, per se, to be argued by the defense and considered by the jury as evidence of contributory wilful and wanton conduct." In essence, the plaintiff argues that his intoxication on the night in question is irrelevant since "his becoming voluntarily intoxicated is not conduct which he consciously knows will naturally and probably

result in his injury." While we find the logic behind the plaintiff's argument worthy of close examination, the plaintiff has not persuaded us to chart a course contrary to the well-settled case law of this State.

■■ The courts of this State have consistently held that the question of whether a guest passenger's voluntary participation in drinking and his voluntary subjection of himself to the peril of riding with a person who had one drink constituted contributory wilful and wanton misconduct is a question of fact for the jury to decide. (*Hamas v. Payne*, 107 Ill.App.2d 316, 246 N.E.2d 1; *Ryg v. Brue*, 91 Ill.App.2d 229, 233 N.E.2d 761; *Aurora National Bank v. Galauner*, 81 Ill.App.2d 132, 224 N.E.2d 604; *Anderson v. Launer*, 13 Ill.App.2d 530, 142 N.E.2d 838. See also *Sloma v. Pfluger*, 125 Ill.App.2d 347, 261 N.E.2d 323; *Kitch v. Adkins*, 346 Ill.App. 342, 105 N.E.2d 527.) As stated in *Anderson v. Launer*, 13 Ill.App.2d 530, 536, 142 N.E.2d 838, 841: "What constitutes wilful and wanton conduct depends on the facts in each case and it cannot be categorically stated what conduct is, and what conduct is not, wilful and wanton." While a passenger's intoxication may be immaterial if he exercises the degree of care required of a sober person, once such passenger's conduct falls below the standard of "the reasonable man of ordinary prudence" the degree of the passenger's intoxication becomes a relevant and material consideration. The facts of the instant case belie any argument that the plaintiff conducted himself as would "the reasonable man of ordinary prudence." Although we cannot say, as a matter of law, that the plaintiff's own conduct was "wilful or wanton" when balanced against the conduct of the defendant, the plaintiff's conduct was of such a nature as to make his degree of intoxication a relevant and material consideration for the jury. Consequently, we find no error in the admission of testimony concerning the degree of the plaintiff's intoxication.

■■ Next the plaintiff contends that the trial court erred in admitting evidence concerning the defendant's past employment record and recent marriage. While neither of these circumstances were relevant to the issues before the trial court, under the circumstances herein present we do not find their admission to have constituted reversible error. It was the plaintiff who solicited from the defendant the fact that he was married before the defense counsel had any opportunity to question the defendant regarding his marital status. Also noteworthy is the fact that no objection was raised concerning the defense counsel's subsequent inquiry into the defendant's marital status. And, while the plaintiff made an objection to testimony concerning the defendant's past employment record on the ground such was "improper to the issues in this case," which was apparently overruled, such objection, when renewed, had the

effect of terminating this line of inquiry. Since the plaintiff made no motion to have the jury disregard this testimony, we find insufficient grounds to hold the tacit admission of such testimony to be reversible error. *Craft v. Accord*, 20 Ill.App.3d 231, 314 N.E.2d 683; *Hill v. Meister*, 133 Ill.App.2d 678, 273 N.E.2d 643.

The plaintiff's next contention is that the $15,000 award of damages was inadequate, against the manifest weight of the evidence, and the result of passion and prejudice. We disagree.

■■ The jury was accurately instructed on the measure of damages and had before it adequate grounds upon which to base an award of $15,000. While the plaintiff presented testimony from an "economic expert" that his decreased earning capacity was between $62,715 and $140,752, the jury, as the trier of fact, was not compelled to accept the figures proffered by plaintiff's "economic expert" regardless of how respectable and qualified he may have been (*Hall v. Kirk*, 13 Ill.App.3d 656, 300 N.E.2d 600). Moreover, the jury had before it evidence that the plaintiff's decreased earning capacity was not solely the result of the injuries sustained in the collision involved herein. The plaintiff fractured both heels while he was in the Army prior to the injuries in question. In fact, the plaintiff was on convalescent leave from the Army as a result of his heel injuries at the time of the collision in question. At the trial plaintiff was asked the following questions about his feet and he gave the following answers:

"Q. Do your feet every [*sic*] bother you?

A. Like when I mow the yard or do a lot of walking or standing on cement all day long it bothers me.

Q. Describe how your feet bother you. How does that feel?

A. About like my back. Guess it's just arthritis. That is what the doctors say, it's arthritis and stuff in my bones. Gets sore and stiff and aches real bad."

There was no evidence that the plaintiff's heel injuries were caused or aggravated by the collision in question. Under these circumstances the jury could have concluded that absent the plaintiff's back injuries his future earning capacity would have been diminished, to a greater or lesser extent, as a result of the injuries to his heels. Likewise, precisely how much of the plaintiff's present and future pain and discomfort was attributable to his back injuries, and not to the injuries to his heels, was particularly well suited for the jury's determination. Considering the record in its entirety, we cannot say that the jury's award of $15,000 was the result of prejudice or passion, that the jury ignored a relevant element in the plaintiff's claim for damages, or that the award was against the manifest weight of the evidence. Since the medical care and

hospitalization were received from the armed services, the plaintiff neither alleged, nor proved any special damages. It is not the province of a court of review to substitute its judgment for that of the jury in the absence of patent error wherein the weight of the evidence demands a contrary conclusion. (*Sokol v. Mortimer*, 81 Ill.App.2d 55, 225 N.E.2d 496.) We, therefore, have no choice but to affirm the verdict tendered by the jury and entered by the trial court in the instant case (*Klatt v. Commonwealth Edison Co.*, 33 Ill.2d 481, 211 N.E.2d 720). See *Wilkinson v. Mullen*, 27 Ill.App.3d 804, 327 N.E.2d 433; *Scrimager v. Cabot Corp.*, 23 Ill.App.3d 193, 318 N.E.2d 521; *Wisniewski v. City of Chicago*, 20 Ill.App.3d 650, 315 N.E.2d 43; *Rhodes v. Oliva*, 13 Ill.App.3d 849, 301 N.E.2d 126.

In view of our conclusions that the plaintiff was accorded a fair trial free from reversible error, we find it unnecessary to address the plaintiff's remaining contention that this court has the power to remand this cause for a new trial on damages alone.

For all of the foregoing reasons we affirm the "Judgment Order" entered by the circuit court of Montgomery County.

Affirmed.

KARNS and CARTER, JJ., concur.