(No. 50108

DOROTHY HAYES, Appellant, v. LOWELL RUSSELL ALSBURG *et al.,* Appellees.

*Opinion filed Sept. 19, 1978.—Rehearing denied Dec. 1, 1978.*

Jerome Mirza & Associates, Ltd., of Bloomington, for appellant.

John R. Luedtke, of Bloomington, for appellee Lowell Russell Alsburg.

T.G. Kanppenberger, Jr., of Champaign, for appellee Sidney M. Vickers.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (William C. Wetzel, of counsel), for appellee Frank E. Enyart.

Costigan & Wollrab, of Bloomington, for appellee Terry L. Hart.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiff, Dorothy Hayes, brought an action for personal injuries in the circuit court of McLean County against the drivers of four cars involved in a rear-end chain collision, which she alleged had occurred as the result of negligence on the part of one or more of the defendants, Lowell Alsburg, Sidney Vickers, Frank Enyart, and Terry Hart. A jury returned verdicts for all four defendants, and the appellate court, with one justice dissenting, affirmed (52 Ill. App. 3d 355). We granted the plaintiff's petition for leave to appeal (65 Ill. 2d R. 315).

There had been an earlier jury trial, at which the court directed a verdict for the plaintiff on the issue of whether she had been guilty of contributory negligence. That jury had returned verdicts in favor of the four defendants, but the trial judge allowed the plaintiff's motion for a new trial. In the second trial, which was conducted before a different judge, the plaintiff also made a motion for a directed verdict on the issue of contributory negligence, as well as a motion for a directed verdict that one or more of the defendants had been guilty of negligence as a matter of law. The motions were denied. The jury returned verdicts in favor of the defendants, and the plaintiff's motions for a new trial and judgment *n.o.v.* were denied.

The four autos involved were traveling in the southbound passing lane of Route 66 near Shirley, at 1:30 a.m. on August 30, 1969. Route 66 at that point was a four-lane divided highway. The posted speed limit was 70 miles per hour. It was clear and dark and there was heavy automobile and truck traffic. There was no lighting of any kind in the vicinity of the collisions. Autos 1, 2, 3, and 4 were driven by the defendants Alsburg, Vickers, Enyart,

and Hart respectively. The plaintiff was asleep in the rear seat of auto 3 (Enyart's). She and the other three occupants of auto 3 were returning from a vacation in Canada and had been traveling all day.

Alsburg, the driver of auto 1, testified that he had observed a sign indicating that a crossover was ahead. (A crossover is a break in the highway that allows cars to make a U-turn and join traffic proceeding in the opposite direction.) He turned on his turn signal and was slowing down preparatory to beginning a U-turn when, he said, his car was struck from the rear by auto 2. Alsburg stated that, remarkably, it was pushed several hundred feet south of, or beyond, the crossover. He had not seen any headlights approaching from the rear until seconds before the impact. Two passengers from his auto gave similar testimony.

The driver of auto 2, Vickers, testified that he had been traveling in the passing lane at 60 to 65 miles per hour when he observed the brake lights of auto 1, which he said was stopped 500 feet ahead to the south of the crossover. He saw no cars approaching from the rear as he brought his auto to a halt one car length behind auto 1. He testified that his tail lights were in operating order at that time. Moments later, his automobile was struck from the rear by auto 3, and slammed into auto 1, knocking it 100 feet forward. Almost immediately his car was hit a second time, but the second impact was much less severe. The four passengers in auto 2 testified to the same effect as Vickers.

The testimony of Enyart, the driver of auto 3, in which the plaintiff was riding, seemed in defiance of physical laws. He testified that he had switched into the passing lane approximately 150 feet from what turned out to be the point of impact, and was proceeding at 60 to 70 miles per hour. He observed auto 2, stopped in his lane with no lights, as he came within 80 feet of it. He

gradually applied his brakes, he said, and slowed to 3 to 5 miles per hour within 6 feet of auto 2, when he was struck once from the rear by auto 4. The impact of that collision caused his car to strike the rear of auto 2. He said his car struck the other only once, contradicting the testimony of Vickers, who said his auto was struck twice by auto 3. He testified that he would have been able to have stopped his car without striking auto 2 had he not been struck from the rear. The plaintiff's adult daughter, also a passenger in auto 3, gave substantially the same testimony.

The driver of auto 4, Hart, who was traveling alone, also gave testimony which seemed extraordinary. He said that he moved into the passing lane at 70 miles per hour moments before the collision. He said that he had noticed auto 3 pass him at a greater speed than his own before he switched lanes. He stated that he was 6 to 8 car lengths from auto 3 when he heard a crash. He put on his brakes immediately, but struck auto 3 once, as he was braking down to "below 50 miles per hour." He did not observe any stop lights on auto 3.

The investigating officer, Leonard Kelly, testified that there were no highway signs indicating the existence of a crossover, and that all the skidmarks and debris from the collisions were located south of the crossover. He estimated the approximate point where auto 1 was struck to be 75 feet south of the crossover, and he testified that the driver of auto 1 told him he had realized he was proceeding on the wrong highway, and that he had intended to make a U-turn at the crossover but had "missed" it. The officer's accident report does not indicate such a statement was given by auto 1's driver; it does, however, indicate violation by auto 1's driver for improper turning, and speeding violations by the drivers of autos 2, 3 and 4.

The plaintiff testified simply, so far as the collisions were concerned, that she was asleep in the back seat, and

did not remember how long she had slept.

The questions we must determine are whether the trial court should have directed a verdict that the sleeping plaintiff was not contributorially negligent as a matter of law, and also whether the plaintiff was entitled to a directed verdict that one or more of the defendants were negligent as a matter of law.

This court has not considered the question, but it has been held that the circumstance alone that an automobile passenger is sleeping at the time of a collision is not sufficient to withdraw the question of his contributory negligence from the jury. Rather, this circumstance should be considered along with all other relevant ones by the jury in deciding whether there was contributory negligence. (*Aurora National Bank v. Galauner* (1967), 81 Ill. App. 2d 132, 135; *Dursch v. Fair* (1965), 61 Ill. App. 2d 273, 285; *Thompson v. Riemer* (1936), 283 Ill. App. 371, 376.) It has been held that a defendant was not entitled to a directed verdict that the plaintiff was contributorially negligent on the sole ground that the plaintiff was asleep (*Ramirez v. Deters* (1976), 41 Ill. App. 3d 935; *Dursch v. Fair* (1965), 61 Ill. App. 2d 273; *Thompson v. Riemer* (1936), 283 Ill. App. 371; *Smith v. Courtney* (1935), 281 Ill. App. 530); similarly it has been held that it was error to grant a plaintiff a new trial on the ground that his sleeping amounted to freedom from contributory wilful and wanton misconduct as a matter of law (*Aurora National Bank v. Galauner* (1967), 81 Ill. App. 2d 132). See generally W. Prosser, Torts sec. 65, at 420 (4th ed. 1971); 5 D. Blashfield, Automobile Law and Practice sec. 215.23 (3d ed. 1966); Comment, 44 Iowa L. Rev. 622 (1959); 17 Minn. L. Rev. 222 (1933); see also 2 F. Harper & F. James, Torts sec. 16.7, at 921-22 (1956).

Nevertheless, the plaintiff argues that under the particular circumstances of this collision her motion for a directed verdict on the issue of her contributory negligence

should have been granted. She contends that there was nothing she could have seen or done to avoid the accident had she remained awake and kept a lookout, and that the courts have frequently deplored "backseat driving." The standard governing the direction of verdicts was stated by this court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86; *Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 247; *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309; *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 157; *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 246; *Walsh v. Finley* (1972), 51 Ill. 2d 174, 178; *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 181; *Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 598.) This standard was made applicable also to the question of contributory negligence: "Logic demands that one rule govern both the direction of verdicts and determination of the presence or absence of negligence or contributory negligence as a matter of law, for in both situations the issue is whether a court or the jury should decide the negligence issue." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 503.

A review of all the evidence tending to prove or disprove the plaintiff's due care for her own safety, "viewed in its aspect most favorable to the opponent[s]," does not require one to say that it "so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." The plaintiff's party had traveled all day and was still on the road at 1:30 a.m.; traffic was heavy, the speed limit was 70 miles per hour, and the hour was late. The driver of auto 4 testified that

the plaintiff's car had passed his at a speed in excess of 70 miles per hour moments before the collision. A jury might have inferred that the speeding had been continuous and concluded that an ordinarily prudent passenger would not have gone to sleep under all these circumstances. (See 5 D. Blashfield, Automobile Law and Practice sec. 215.23 (3d ed. 1966).) It is not unreasonable to say that these evidentiary factors in combination produce a question of fact as to whether the plaintiff was in due care for her own safety, a question which was properly submitted to the jury.

Finally, the trial court did not err in denying the plaintiff's motion for a directed verdict that the jury find any one or more of the defendants guilty of negligence as a matter of law. The evidence was sharply conflicting; no driver conceded liability. The evidence against any of the drivers in favor of the plaintiff clearly did not over-whelmingly favor the plaintiff so that a verdict for the defendant could not stand. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

The plaintiff asked the trial court to instruct the jury in effect that it could discharge its duty simply by finding against one or more of the four defendants. The responsibility of the jury could not be so simply and summarily met. The circumstance that there were four defendants did not diminish or alter the obligation of the jury here to find against only the person or persons whose liability to the plaintiff had been specifically and individually established.

Prosser describes this succinctly:

> "It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant." (W. Prosser, Torts sec. 39, at 218 (4th ed. 1971).)

He further observes:

"Some quite intricate questions arise where the plaintiff proceeds against two or more defendants. Unless there is vicarious liability or shared control, the logical rule usually is applied, that the plaintiff does not make out a preponderant case against either of two defendants by showing merely that he has been injured by the negligence of one or the other. Occasional statutes permitting the plaintiff to join the two as defendants, and to proceed against them with pleading in the alternative, have been held to be intended to avoid a nonsuit, but not to affect the ultimate burden of proof by a preponderance of the evidence against someone. The questions which arise are amply illustrated by the cases of colliding vehicles." W. Prosser, Torts sec. 39, at 221 (4th ed. 1971).

As was aptly noted by the appellate court in this case, the directed verdict would have been internally inconsistent. On the one hand, it implies that there is overwhelming evidence against any one or more of the defendants; but on the other hand it implies that the evidence is not overwhelming against those defendants the jury chooses to find not guilty of negligence, so long as at least one is found to have been negligent. See *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 682 (English, J., dissenting).

For the reasons given, the judgment of the appellate court, affirming the judgment of the circuit court of McLean County, is affirmed.

*Judgment affirmed.*