119 Ill. App.3d 763 (1983)
457 N.E.2d 125
NORMA J. DARNELL, Plaintiff-Appellant,
v.
IMPACT INDUSTRIES, INC., Defendant-Appellee.
No. 82-955.
Illinois Appellate Court  Second District.
Opinion filed November 22, 1983.
*764 James M. Wilson, of Ingemunson & Wilson, of Yorkville, for appellant.
Stephen J. Nagy, of Witwer, Moran, Burlage & Witwer, of Chicago, for appellee.
Reversed and remanded.
JUSTICE HOPF delivered the opinion of the court:
Plaintiff, Norma J. Darnell, brought this action in the circuit court of Kendall County, seeking compensatory and punitive damages from defendant, Impact Industries, Inc. (Impact). Plaintiff was discharged from her employ with Impact after working there one day. She alleged she was fired for having filed a workers' compensation claim against her previous employer. After plaintiff presented her case before the jury, the trial court granted defendant's motion for a directed verdict. Plaintiff contends on appeal that the trial court erred in directing a verdict in favor of Impact.
Plaintiff claims that Impact terminated her when it learned she had filed a workers' compensation claim with her previous employer, *765 Federal-Huber Corporation (Federal-Huber). Her complaint named both Federal-Huber and Impact as defendants, but Federal-Huber was voluntarily dismissed from the case. Plaintiff also contends the trial court's basis for granting Impact's motion for directed verdict at the close of plaintiff's case was that she failed to state a cause of action. She contends this was improper because the court had previously denied a motion to dismiss for the same grounds, although this occurred before a different judge.
The record reveals that on May 7, 1981, plaintiff submitted an application for employment with Impact. Plaintiff's application was reviewed and referred to Herb Smith, who interviewed plaintiff. After the interview, plaintiff was told that she was hired and could begin work Monday, May 11, 1981. Plaintiff worked that Monday without incident.
The next day, however, an Impact employee told the personnel department that plaintiff had been injured at work in her previous job at Federal-Huber. Because of this information, Janet Spears, personnel administrator for Impact, contacted Federal-Huber and verified plaintiff's dates of employment at Federal-Huber and that she had filed a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 et seq.). The Impact application form that plaintiff filled out asked: "Have you had a serious illness or injury in the past five years?" Secondly, it asked: "Have you ever received compensation for injuries?" Plaintiff answered "no" to both questions.
A memo signed by Janet Spears dated May 12, 1981, indicates that the personnel manager at Federal-Huber told Spears that plaintiff Darnell had injured her arthritic neck at work when she and a co-worker were "playing around" on April 16, 1980. She did not return to work prior to being laid off on July 11, 1980. Spears was also told that Darnell had received benefits from a workers' compensation claim. Spears then contacted Darnell's employer previous to Federal-Huber. She learned from them that while Darnell had not made a workers' compensation claim, she had had several lengthy medical leaves. The memo prepared by Spears was admitted as a plaintiff's exhibit.
On the same day, May 12, an hour after she started her second shift with Impact, plaintiff was called into the office and asked about the previous claim and injury. She conceded that she had filed a workers' compensation claim against Federal-Huber. However, she urged that she had never received any compensation and she had dismissed the claim. She denied that any of her illnesses were serious and gave the names of her attorney and insurance agents to verify that she had *766 not been compensated. Spears and the others who were present told plaintiff that she would be suspended until Friday, May 15, 1981, so that an investigation could be made. That Friday plaintiff was told she was terminated.
Plaintiff then filed suit against both Impact and Federal-Huber alleging she had been discharged in retaliation for having filed a workers' compensation claim. As indicated, Federal-Huber was voluntarily dismissed. Impact's motion to dismiss for failure to state a cause of action was argued by the parties and denied by the trial court. After plaintiff's evidence was presented, Impact filed a motion for a directed verdict which the trial court granted. Plaintiff appeals.
Plaintiff relies primarily on the case of Kelsay v. Motorola, Inc. (1978), 74 Ill.2d 172, 384 N.E.2d 353, which established the principle that an employer who discharges an employee in retaliation for that employee having filed a workers' compensation claim may be liable for both compensatory and punitive damages. In Kelsay, the court noted that the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 et seq. (the Act)) provided a new statutory system for accidental injuries or death of workers in the work place. Under the scheme implemented by the Act the worker gave up his common law right to sue his employer in tort, and the employer gained the benefit of avoiding sympathetic juries who could give high recoveries. The fundamental purpose of the Act was to afford protection to employees by providing them with prompt and equitable compensation for their injuries. Because the enactment of the Act was intended to further sound public policy, the Kelsay court held that it should be upheld and implemented by allowing a cause of action for retaliatory discharge. 74 Ill.2d 172, 189, 384 N.E.2d 353.
Arguably, the principles enunciated by the court in Kelsay v. Motorola, Inc. (1978), 74 Ill.2d 172, 384 N.E.2d 353, are applicable to the instant case. Kelsay established that "an employer's otherwise absolute power to terminate an employee at will" should not be exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act. (74 Ill.2d 172, 181, 384 N.E.2d 353.) Although in the case at bar plaintiff fully exercised her rights under the Act prior to commencing work with Impact, she did allege that she was fired for exercising her statutory rights under the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.4(h)).
 1 The relatively new tort of retaliatory discharge was intended to discourage employers from exercising their otherwise absolute power to discharge an at-will employee in a manner that circumvents the employee's rights under the Act. (Bryce v. Johnson & Johnson *767 (1983), 115 Ill. App.3d 913, 920, 450 N.E.2d 1235, 1239.) There are two elements to a claim for retaliatory discharge: at-will employment status and acts that violate public policy. (Palmateer v. International Harvester Co. (1981), 85 Ill.2d 124, 421 N.E.2d 876; Petrik v. Monarch Printing Corp. (1982), 111 Ill. App.3d 502, 504, 444 N.E.2d 588.) Although Impact characterizes plaintiff's position as a new hire, there is no dispute that she was an employee of Impact. Plaintiff also claimed Impact performed certain acts which violated public policy. We believe plaintiff presented sufficient evidence to create a factual question for the jury.
Because of the procedural posture of this case, we are not making a determination of whether plaintiff stated a cause of action for retaliatory discharge. We do not address that question nor the public policy issue it raises, and we are only concerned with the narrow question of the sufficiency of the evidence. Our review of that evidence is further narrowed by the fact that this is an appeal from the granting of a motion for a directed verdict.
 2, 3 In making the determination of whether the dismissal of a claim is proper, the court should accept plaintiff's allegations as true. (Wilczynski v. Goodman (1979), 73 Ill. App.3d 51, 391 N.E.2d 479.) It has also been held that verdicts ought to be directed "only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504; Hayes v. Alsburg (1978), 72 Ill.2d 560, 382 N.E.2d 239.
 4 In the instant case plaintiff alleged her discharge was "in contravention of a clearly mandated public policy." (Palmateer v. International Harvester Co. (1981), 85 Ill.2d 124, 421 N.E.2d 876, 881.) Plaintiff's evidence included her testimony that when she was called into the personnel office she inquired as to the reasons for her discharge and was told she was being terminated for having filed a workers' compensation claim. This evidence supports the allegations in her complaint. We recognize that at another point plaintiff testified that when she asked why she was being terminated she was told that it was because of the answers she had given to the two questions on the application  one regarding injuries and the other regarding having received compensation. Although this may have been a proper reason for Impact to have discharged plaintiff, the question of which evidence should be believed was a factual question for the jury's consideration. (Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504; First National Bank v. Porter (1983), 114 Ill. App.3d 1, *768 11, 448 N.E.2d 256, 263.) Plaintiff also proferred evidence in the form of a memo prepared by personnel administrator Janet Spears which indicated Spears had called plaintiff's previous employers and asked if plaintiff had filed a workers' compensation claim while in their employ. This evidence could also support plaintiff's allegation that she was discharged for having filed a workers' compensation claim.
Thus, we believe that when all the evidence is viewed in its aspect most favorable to plaintiff, it did not overwhelmingly favor Impact, and we must reverse the trial court's decision to take this case away from the jury. We recognize that the evidence adduced below could also lead to the conclusion that the plaintiff was fired for having misrepresented information concerning a previous injury or having received compensation for injuries. However, it is just this factual dispute that the jury is best equipped to consider.
For the reasons stated, the judgment of the circuit court of Kendall County is reversed and remanded for proceedings consistent with this order.
Reversed and remanded.
LINDBERG, J., concurs.
JUSTICE REINHARD, dissenting:
The majority appears to reason that they need not determine whether plaintiff stated a cause of action for retaliatory discharge and "the public policy issue it raises" because the case was decided on a directed verdict for defendant. Instead, they perceive the only question is that of the sufficiency of the evidence. In that posture, they conclude that there is evidence to support "the allegations in her complaint" and conclude there is a factual dispute which the jury is best equipped to consider. However, upon a motion for directed verdict, the sufficiency of the evidence is reviewed in the context of whether it proves a cause of action which would support a verdict. It has been defendant's position throughout the trial, and on appeal, that plaintiff failed to plead and prove a cause of action. While the sufficiency of the allegations of plaintiff's complaint is not at issue on appeal since the trial court did not dismiss her complaint, whether the facts adduced support a cause of action based upon the tort of retaliatory discharge, as examined under the Pedrick standard, is certainly before us and requires analysis of the scope of the cause of action for a retaliatory discharge.
*769 In Kelsay v. Motorola, Inc. (1978), 74 Ill.2d 172, 384 N.E.2d 353, our supreme court recognized that a cause of action for retaliatory discharge existed and was proved under facts which showed that an employer expressly discharged an employee for the reason that she exercised her rights under the Workers' Compensation Act. The court reasoned that the Act "provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. Consequently, its enactment by the legislature was in furtherance of sound public policy." (74 Ill.2d 172, 181, 384 N.E.2d 353.) The court in Palmateer v. International Havester Co. (1981), 85 Ill.2d 124, 421 N.E.2d 876, held that the tort of retaliatory discharge exists where the employer discharges the employee in retaliation for the employee's activities, and that the discharge is in contravention of a clearly mandated public policy. (85 Ill.2d 124, 134, 421 N.E.2d 876.) There, it was alleged in the complaint that an employee was fired both for supplying information to local law enforcement authorities that another employee of the employer might be involved in a violation of the Criminal Code of 1961 and for agreeing to assist in the investigation and trial of the employee if requested.
I have doubts that "retaliation" is involved here since the workers' compensation claim was filed while plaintiff was an employee of a previous employer and she was not discharged for an activity performed while in the employ of defendant. Nonetheless, I would concede that the right of an employer to terminate an employee under the generally accepted at-will employment rule is subject to exception when such termination is in contravention of a clearly mandated public policy. If, for example, an employee could prove that his employer had a fixed policy to terminate any employee who it learned had previously filed a workers' compensation claim and exercised rights under the Workers' Compensation Act, a cause of action for wrongful discharge should lie if such an employee were terminated solely for making a prior claim. Here, I believe, the facts fall far short of that situation, and the trial court correctly granted defendant's motion for a directed verdict.
The evidence, taken in its aspect most favorable to plaintiff, included her testimony that she was told she was terminated for having filed a workers' compensation claim. The evidence also showed that defendant's personnel manager had called plaintiff's previous employer and asked if plaintiff had filed a workers' compensation claim while in its employ. The context in which this information was sought and disclosed to defendant was clearly related to the legitimate right of an employer to inquire into the past health and physical condition *770 of its employee. Here, the proofs showed that plaintiff was just hired, that she had indicated no serious illness or injury in the past five years and that she had stated on her application that she had not previously received compensation for injuries. The evidence also showed that the defendant had been subsequently informed by another employee that the plaintiff had been injured at work in her previous job. The defendant contacted plaintiff's two prior employers. Her immediate, prior employer, Federal-Huber, related that plaintiff hurt her neck "playing around" on April 16, 1980, and did not return to work prior to her layoff on July 11, 1980. It was also learned that she had filed a workers' compensation claim. Her employer before that informed defendant that she had several lengthy medical leaves, one for a nervous condition. Only after this information was learned did defendant suspend, and later discharge, plaintiff. Thus, considering the entire testimony in the record, which the majority opinion fails to set out in any detail, but instead relies essentially on two bits of evidence in isolation from its relationship to all the other evidence, it is clear under the evidence that defendant's inquiries and its later termination of plaintiff were related to her prior condition of health. There is simply no evidence that plaintiff's termination was motivated by any policy of defendant's to terminate her based upon her previous exercise of her rights under the Workers' Compensation Act.
This case illustrates the extent to which an employer can be compelled to defend a suit under facts which, I believe, fully justify the employer's prerogative to discharge an employee.
I would affirm.