(No. 5541—

RICHARD KOLSKI, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 13, 1976.*

LOUIS G. DAVIDSON & ASSOCIATES, LTD., Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; EDWARD L. S. ARKEMA, JR., Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Richard Kolski, seeks to recover damages for the loss of his right leg which was amputated following an accident which occurred on September 20, 1967, when the motorcycle he was riding on Illinois State Route 22 near Lake Zurich, Illinois, left the highway on a curve and struck a guardrail. The guardrail had been damaged in an accident on August 12, 1967, which left the leading edge of the guardrail in a sharp, jagged condition. Claimant contends that his right leg struck

the jagged edge of the rail, causing the injury which resulted in the amputation of the leg above the knee.

The amended complaint upon which this case was heard alleged three theories of recovery. In Count One Claimant asserts that the State was negligent in allowing the guardrail to remain in a jagged and defective condition, that the negligence of the State was the proximate cause of his injury, and that he was free of contributory negligence. In Count Two Claimant alleges that the State was guilty of wanton and willful misconduct in failing to repair the guardrail, that the wanton and willful misconduct of the State proximately caused his injury and that he was free of contributory wanton and willful misconduct. In Count Three Claimant asserts a theory of strict tort liability, alleging that the State is strictly liable to Claimant for the loss of his right leg as a result of the dangerous and defective condition of the guardrail. However, during the course of oral argument, Claimant's attorney advised the Court that Claimant was abandoning his strict liability claim.

Route 22 runs in a generally easterly and westerly direction, but curves to the north as it follows the southwest shoreline of Lake Zurich. The guardrail in question borders Route 22 on that curve. In its original, undamaged condition it was 75 feet long and was placed back about three and one-half feet from the edge of the road. The shoulder of the road was covered with gravel. The guardrail was composed of panels about 12 and one-half feet long which were bolted together and stood two and one-half to three feet above the ground. The top and bottom of the rail was rounded, and there was no sharp or protruding edges to the guardrail as it was originally installed.

James Zipp, the Chief of the Lake Zurich Police Department, and several other witnesses called on be-

half of Claimant, testified that on August 12, 1967, a car struck the west end of the guardrail, shearing off a section and bending the guardrail back from the highway. The accident left the west edge of the guardrail with a sharp, protruding edge, which was clearly shown by numerous photographs which were introduced into evidence.

Chief Zipp stated that between the accident on August 12, 1967, and the accident of September 20, 1967, the guardrail was not repaired. Zipp traveled past the guardrail several times daily during the course of his duties and would have noticed any repairs to the guardrail which was clearly visible from the road.

The accident involving Claimant occured at approximately 12:30 a.m. on September 20, 1967. It had rained the previous evening, and the pavement was damp. Claimant was 21 years old at the time of the accident and was coming from a bowling alley located on Route 22 about a quarter to one-half mile from the accident site. Claimant lived nearby and had often traveled the route by car and motorcycle.

As Claimant proceeded from the bowling alley on his motorcycle, he was followed by a car driven by one Michael Kelley, a friend with whom he had spent the evening. Claimant and Kelley had had two bottles of beer in the bowling alley and were going into Lake Zurich when the accident occurred. Kelley testified that he was about 50 yards behind Claimant and observed that the headlight and taillight on his motorcycle were operating. He estimated that Claimant was traveling about 30 miles per hour, which was the posted speed limit on Route 22. Kelley said that he saw Claimant traveling in a straight path on the right side of the road when he suddenly saw sparks coming from the motorcycle as it reached the western edge of the guardrail. He

saw the motorcycle fly into the air, come down and skid along the road.

Chief Zipp was called to the scene immediately and found tire tracks on the shoulder of the road for a distance of 155 feet from where the motorcycle left the pavement near the west end of the guardrail. Zipp examined the guardrail and found blood on the leading, west edge, and traces of blood further along the guardrail.

Claimant was found in an embankment behind the guardrail. Zipp said that when he found Claimant, Claimant's leg was "just hanging on by threads." Claimant was in shock and received emergency medical treatment at the scene. He was taken to Condell Memorial Hospital where he was treated by Dr. Edwin L. Mauer, an orthopedic surgeon. Dr. Mauer testified that he found Claimant in a state of shock and with an "almost complete amputation of the lower end of the thigh just above the knee."

Dr. Mauer determined that there was no chance of saving the leg and performed an amputation. Dr. Mauer described in detail the treatment which he rendered Claimant, and Claimant's subsequent rehabilitation.

In answer to a hypothetical question propounded by Claimant's attorney, Dr. Mauer stated that in his opinion, to a reasonable degree of medical certainty, the amputation of Claimant's leg was caused by it coming into contact with the jagged edge of the guardrail.

Donald Fenner, who owned and operated a service station in Lake Zurich, examined the accident site on the morning following the accident. He said that he found an accumulation of gravel on the road.

Claimant testified that he had acquired the motor-

cycle involved in the accident in May or June, 1967. He said that he had driven past the accident site many times on the motorcycle and had always negotiated the curve at 30 miles per hour with no difficulty.

He stated that on the night of the accident he had slowed to 30 miles per hour as he approached the curve and had his motorcycle under control. There was no traffic ahead of him or coming towards him from the other direction. There was nothing to obstruct his vision, and he said that he could see both the road and the guardrail clearly. He stated that the last thing he remembered was entering the curve; he did not recall having gone off the road and had no explanation of having done so.

Claimant was hospitalized for four weeks following the accident. He testified in detail as to his hospital stay, and the "phantom pains" which he experienced following the amputation of his leg. During his high school years Claimant had been active on several athletic teams. After the amputation he was fitted with a prosthesis and attempted to resume some of his former athletic activities.

Louis Lesniak, a civil engineer employed by the Illinois Division of Highways, was called by Claimant as an adverse witness. Lesniak was employed as a field maintenance engineer in September, 1967. His offices were in Grays Lake, Illinois, approximately 15 miles from Lake Zurich. His office had a sub-storage station located in Lake Zurich, approximately one-half mile from the accident site. The storage station was frequented by State employees picking up equipment, and Lesniak said that these employees would necessarily pass the damaged guardrail in traveling between his offices and the storage station. These employees were instructed to observe the conditions of roads during the

course of their work and to note conditions in need of repair.

Lesniak further testified that one week notice should have been ample time in which to repair the guardrail, and that it was an unusual departure from standard practice to permit the damaged guardrail to remain in disrepair from August 12 to September 20. He said that he knew of no reason which would have justified the delay in the repair of the guardrail.

We first consider whether, on these facts, Claimant has established a cause of action for negligence. This Court has held on numerous occasions that the State of Illinois is not an insurer of every accident which occurs upon its public highways. *Link v. State,* 24 Ill.Ct.Cl. 69; *Palecki v. State,* 27 Ill.Ct.Cl. 108. The State of Illinois is charged only with maintaining its highways in a reasonably safe condition and with using reasonable diligence in doing so. *Garrett, et al. v. State,* 22 Ill.Ct.Cl. 343. We have also held that the State's duty of due and reasonable care extends to maintenance of the shoulders of roadways for the uses for which they are reasonably intended. *Lee v. State,* 22 Ill.Ct.Cl. 291; *Welch v. State,* 25 Ill.Ct.Cl. 270.

Thus, in order for Claimant to recover on his negligence claim, he bears the burden of proving by a preponderance of the evidence that the State breached its duty to use reasonable care in maintaining the guardrail along Route 22, that the negligence of the State was a proximate cause of his injury, and that he was free of contributory negligence.

The record does establish that the State did not use reasonable care in maintaining the guardrail alongside Route 22. The guardrail had been damaged in an automobile accident on August 12, 1967, yet the guardrail

had not been repaired by September 20, 1967, when Claimant's accident occurred. Photographs of the guardrail which were introduced into evidence show that the edge of the guardrail was in a dangerous condition on September 20, and the testimony of Chief Zipp establishes that the condition had existed since the August 12 accident.

The guardrail was clearly visible from Route 22, and a State Highway Department storage shed which was frequented by State employees was located only a few hundred feet from the damaged guardrail. Even if the State did not have actual notice of the dangerous condition, the fact that the condition had existed for over one month is sufficient to charge the State with constructive notice of the condition. See *Candle v. State,* 19 Ill.Ct.Cl. 35; *Pyle v. State,* No. 5343 (filed November 19, 1973). Louis Lesniak, a State maintenance engineer, testified that the guardrail should have been repaired within one week of its having been damaged, and that it was an unusual departure from standard practice for the guardrail to have remained in disrepair for as long as one month.

For these reasons, we find that the State did not use reasonable care in maintaining the guardrail.

We further find that the failure of the State to properly maintain the guardrail was a proximate cause of Claimant's injury. Respondent contends that Claimant's leg did not strike the jagged edge of the guardrail, but rather that the leg was crushed against the undamaged length of the rail. However, we think that the preponderance of the evidence is that Claimant's leg did strike the jagged edge of the guardrail causing the loss of Claimant's leg.

Chief Zipp, who was at the accident site almost immediately, stated that he examined the edge of the rail and found Claimant's blood on the jagged end. He also found tire tracks from a motorcycle which led to the sharp edge.

Most significantly, Dr. Mauer testified that he observed an "almost complete traumatic amputation" of Claimant's leg when he saw Claimant in the hospital emergency room. He added that such an injury was most likely caused by striking a sharp object, such as the damaged end of the guardrail. Dr. Mauer said that it was improbable that such an injury was caused by the leg being crushed against the length of the guardrail, as he did not observe any bruises or abrasions around the amputation site.

We therefore conclude that Claimant's leg struck the damaged edge of the guardrail, and that the negligence of the State, in permitting the guardrail to remain in a dangerous condition for over one month, was a proximate cause of the loss of Claimant's leg.

Respondent strongly contends that Claimant has failed to prove his freedom from contributory negligence. In resolving this issue, we are first faced with the fact that Claimant has offered no explanation for his motorcycle having left the highway. Claimant himself has no recollection of the incident after he entered the curve on Route 22. However, Michael Kelley, who was following Claimant in an automobile and who was an eyewitness to the accident, testified that Claimant was proceeding at a lawful speed and in a straight line when his motorcycle suddenly left the road and struck the guardrail. This testimony does tend to establish that Claimant was operating the motorcycle in a lawful and proper manner at the time of the accident. We also note

the testimony of Donald Fenner who examined the accident site and found an accumulation of gravel on the highway.

Based on the foregoing testimony we conclude that Claimant has by a preponderance of the evidence established his freedom from contributory negligence.

It is difficult for this Court to understand why Chief Zipp apparently failed to notify appropriate authorities of the dangerous condition of the guardrail in view of the fact that he traveled past the guardrail several times daily. It is also difficult to understand the failure of State employees to report the damaged condition of the guardrail, as indicated by the testimony of Field Maintenance Engineer Louis Lesniak. The Court is constrained to express concern at such an apparent lack of cooperation and due care by state and municipal personnel. We believe that the safety of our citizèns requires that a greater degree of care be exercised than exhibited in this instance by the local Chief of Police and the State's employees.

We feel obligated on the basis of the facts contained in this record to enter an award on behalf of Claimant.

Claimant was 21 years old at the time of the accident and has a life expectancy of over 40 years. He has incurred substantial medical expenses as a result of the loss of his leg. Claimant is hereby awarded the sum of Twenty-Five Thousand Dollars ($25,000).