(Nos. 78-CC-2043, 78-CC-1272, 78-CC-1643 cons.—
)

BEAT R. KELLER, Administrator of the Estate of Robert R. Keller, Deceased, STEPHEN BESHEL, and JAMES S. CESAR, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed December 6, 1982.*

*Order filed January 6, 1984.*

JOSEPH N. BONNER, for Claimant Beat R. Keller, Administrator.

DAVID A. DECKER AND ASSOCIATES, LTD., for Claimant Stephen Beshel.

LEO BLETMAN, for Claimant James S. Cesar.

TYRONE C. FAHNER, Attorney General (FRANCIS DONOVAN, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

These three cases are tort claims arising out of a one-car accident at Route 173 and Price Road in McHenry County, Illinois. The accident happened September 3, 1977, at about 1:45 a.m. The three cases were consolidated for purposes of trial.

On September 2, 1977, James Cesar, Stephen Beshel, and decedent Robert R. Keller met at Beshel's home in Gurnee, Illinois, between 7:30 and 7:45 p.m. From there they went in Cesar's car to Beshel's aunt and uncle in Gurnee, Illinois, where they remained from about 8:00 or 8:30 p.m. until some time after 10:30 p.m., possibly until 12:30 a.m. Cesar was driving the car eastbound on Route 173 towards Hebron, Illinois, at a speed he said was between 50 and 55 miles per hour. In the front seat was Keller, and Beshel sat in the rear seat behind Keller.

Route 173 curves to the northeast where it intersects Price Street near Hebron, Illinois. As Cesar started to negotiate the curve he lost control of his car, resulting in a slide sideways along the shoulder and striking an unfinished exposed end of the guardrail to the southeast of the highway.

The exact cause of Cesar's car leaving the highway was not established by the evidence. According to Cesar, his rear tires "must have hit gravel, I lost control of the car." The car slid until it hit the guardrail. In the collision Robert Keller was killed. Cesar and Beshel were injured. The guardrail, as a result of the collision, protruded thru

the rear wheel well on the left side after entering just in front of the right front door.

There was evidence that Cesar's vehicle left Route 173 and slid 228 feet to the point of impact with the guardrail and another 54 feet after impact. The point of impact was 10 feet from the travelled portion of Route 173.

The testimony of the presence of gravel on the highway was disputed. No one, however, testified to seeing gravel as far back from Price Street as the point where Cesar's car first left the highway.

Cesar was ticketed for driving while intoxicated. A blood test was taken with his permission, and it showed .15 percent alcohol.

As to the guardrail, it appeared from the evidence that it had been damaged the previous May by a car colliding with it. The guardrail was to protect against going into a ditch by a vehicle leaving the highway. The maintenance crew removed the damaged curved portion of the guardrail at that time and, since they had no replacement curved rail in stock, the crew put up four reflectorized barricades in the area where the guardrail was removed. The barricades were 2 x 8's with a reflectorized panel approximately six feet long supported by 2 x 4's. One barricade was placed at the end of the guardrail on Route 173 and the other three covered the area where the guardrail had been removed. A stub six inches long protruded past the post on which the damaged rail had been attached.

Claimants all claim the State was negligent in permitting a dangerous condition to exist for over three months after having actual notice that it existed. Soon

after the present accident, the State made repairs to the guardrail by bending a straight section and installing it. No reason was given why this wasn't done back in May when the first collision occurred.

The Respondent's principal argument, here quoted verbatim, is taken from its brief, the pertinent portion of which is hereby incorporated in this opinion. The quoted argument is as follows:

"The general rules with regard to the responsibility of the State in maintaining its roadways are succinctly set forth in *Kolski v. State* (1976), 31 Ill. Ct. Cl. 307, where this Court stated at p. 312:

'This Court has held on numerous occasions that the State of Illinois is not an insurer of every accident which occurs upon its public highways. The State of Illinois is charged only with maintaining its highways in a reasonably safe condition and with using reasonable diligence in doing so. We have also held that the State's duty of due and reasonable care extends to maintenance of the shoulders of roadways for the uses for which they are reasonably intended.'

In terms of roadside hazards, the applicable rule is set forth in *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, where the court held that the Restatement (Second) of Torts applies to questions of this nature. The Restatement in section 368 provides as follows:

'A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) *foreseeably deviate from it in the ordinary course of travel.'*

That the State owned and maintained Route 173, including the guardrail, is undisputed. That the State was responsible for the condition of the guardrail as it existed on September 3, 1977 is also undisputed. The dispute concerns whether a duty had been breached to the claimants because of this ownership.

A duty, under the rule, has been breached when the possessor responsible for a roadside object or condition knew, or should have known, that it posed an unreasonable risk. This duty, however, is not framed so as to make the possessor an insurer of the safety of persons using the roadway. The risk in question must be such that a person using ordinary care is injured in the course of a foreseeable deviation in the ordinary course of his journey.

A further reading of the comments to section 368 of the Restatement expands upon the zone of risk imposed by the roadside object or condition.

'. . . (The rule) applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in *the ordinary course of travel*. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the *normal incidents of travel* . . . . . Comment (e).

In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. *Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far* . . . . . Comment (h).'

Thus the risk imposed by the roadside object or condition must be such that a traveler exercising ordinary care deviates from the highway and comes into contact with the object or condition. Liability for the injury therefrom will be imposed only where the traveler's deviation is foreseeable and where the deviation can be deemed a normal incident of travel.

No liability can attach where under a given set of circumstances the injury was not reasonably foreseeable. The creation of a legal duty requires more than mere possibility of occurrence. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.

In *Cunis*, the supreme court was considering whether a village owed a duty to an automobile passenger who, because of collision, had been thrown from his automobile approximately 30 feet onto the village-maintained parkway where one of his legs was impaled upon an object protruding from the ground. The court stated at p. 619:

'In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight. We will not look back, as it was felicitously put by Justice Cardozo, "at the mishap with the wisdom born of the event ° ° °." ' "

From the evidence before the Court in the present case, we find that the State was negligent in allowing a dangerous hazard to exist for over three months after actual notice.

We further hold that Claimant Cesar failed to meet his burden of proof that he was free from contributory

negligence. However, his passengers had no such burden to prove Cesar free of negligence, merely that each of them was not contributorily negligent; Cesar's negligence, if any, would not be imputed to them.

To answer Respondent's argument, we hold that a vehicle going off the highway while *rounding a curve* at night at a speed of 50 to 55 miles per hour is a deviation from normal travel which was reasonably foreseeable.

This Court finds support for its holding the State negligent in the case of *Kolski v. State* (1976), 31 Ill. Ct. Cl. 307. In that case, a motorcycle left the highway and struck a jagged section of guardrail which had been damaged several months before and which the State had failed to repair. The Court held the State liable for negligence in failing to repair the hazardous guardrail.

That a passenger has no duty to keep a lookout or control the driver unless he knows or should know that such action was essential to his own safety has been established by case law. *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 403 N.E.2d 237; *Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461; *Dertz v. Pasquina* (1974), 59 Ill. 2d 68, 319 N.E.2d 12.

The fact that the driver Cesar may have been drinking does not in and of itself make the passengers negligent in riding with him without evidence that such drinking had made him operate his vehicle in such a manner that reasonable persons would not have accompanied him. There is a lack of evidence that such was the case here. See *Kitch v. Adkins* (1952), 346 Ill. App. 342, 105 N.E.2d 527.

While we hold the State was negligent in failing to make the guardrail safe to the traveling public, it does not follow that a negligent driver may recover. However,

the case of the two passengers is different. They were injured by the combined negligence of the driver (if he was negligent) and the State's negligence. Since any negligence of the driver is not imputable to the passengers, it is axiomatic that they would have separate recourse against the driver and against the State. While an errant driver may not himself recover, yet innocent third parties may very well recover.

Both Beshel and Keller sued the driver Cesar in the Circuit Court of McHenry County. In settlement for a covenant not to sue, the Keller estate received $9,000, and Beshel $9,800.

The deceased was 20 years old, an auto mechanic and apparently generous to his parents. The law presumes substantial damage.

Claimant Beshel received injuries necessitating medical expenses of $8,487.42 and loss of income in the amount of $2,286. Some or all of his medical expenses were compensated by insurance, according to the testimony. He did not, however, produce any evidence of how much insurance was received. The Court holds that it was his burden to prove how much. The State has no way of knowing this and cannot be expected to carry the burden of proof on such a fact. Therefore, we cannot allow his medical expenses since the amount allowable would be speculation on our part, lacking proof of what he was compensated by insurance. He failed to testify to this amount. It could have been in full of the amount. We do not know.

This Court awards Claimant Beshel the total sum of $35,000, less $9,800 received in settlement and less $8,487.42 medical expenses, for a net award of $16,712.58.

This Court awards Beat R. Keller, administrator, the

sum of $45,000 for the death of Robert R. Keller, from which $9,000 should be deducted making a net award of $36,000.

## ORDER

Roe, C.J.

This matter comes before the Court after having heard oral argument in said cause.

The original order of the Court is hereby affirmed, and it is ordered that the award received by Claimant Beshel be increased by $4,630.85, for a net award of $21,343.43.